UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID MORALES ZENQUIS, )<br>*Petitioner*, )<br>)<br>v. )<br>)<br>T. PULLEN, CAVERLY, and EFTAXAS, )<br>*Respondents*. ) | 3:22-CV-1151 (SVN)<br><br><br><br><br><br>April 13, 2023 |

**RULING ON RESPONDENTS' MOTION TO DISMISS**

Petitioner David Morales Zenquis, a prisoner incarcerated at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"), has filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, asking the Court to order that he be tested for autism spectrum disorder ("ASD") and provided psychiatric treatment. Respondents have moved to dismiss the petition on the ground that Petitioner failed to exhaust his administrative remedies before commencing this action. For the following reasons, Respondents' motion to dismiss is DENIED.

I.   SECTION 2241 AND EXHAUSTION OF REMEDIES

A. Section 2241

Section 2241 grants federal courts jurisdiction to issue writs of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A writ of habeas corpus under § 2241 "is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). An inmate may challenge under § 2241, for example, "such matters as the administration of parole, computation of [his] sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001).

B. Exhaustion Procedures

Before filing a habeas petition pursuant to § 2241, prisoners are required to exhaust the internal grievance procedures of the Bureau of Prisons ("BOP"). *Carmona*, 243 F.3d at 634; *see also Razzoli v. Strada*, No. 10-cv-4802 (CBA), 2013 WL 837277, at *2 (E.D.N.Y. Mar. 6, 2013) (citing *Carmona*, 243 F.3d at 634). The exhaustion requirement applicable to § 2241 petitions is judicial, rather than statutory. *See Carmona*, 243 F.3d at 634 ("[A]lthough § 1997e(a) of the Prisoner Litigation Reform Act [('PLRA')] . . . contains a statutory administrative exhaustion requirement, we have held, in the context of a § 2254 petition, that the requirements of the Act do not apply to habeas proceedings. . . . Doubtless the same rule should obtain in § 2241 cases as in § 2254 petitions." (cleaned up)); *see also Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (noting that the distinction between a statutorily or judicially imposed exhaustion requirement is "pivotal" because "statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions").[1]

Relevant here, the BOP has a four-step process for inmates to exhaust administrative remedies: (1) informal resolution with prison staff through a BP-8 form, 28 C.F.R. § 542.13(a); (2) an initial formal request submitted to the Warden using a BP-9 form, *id.* § 542.14; (3) an appeal to the appropriate BOP Regional Director using a BP-10 form, *id.* § 542.15(a); and (4) a subsequent appeal to the BOP General Counsel using a BP-11 form, *id.*

---

[1] Respondents claim that the PLRA applies to this § 2241 action. *See, e.g.*, ECF No. 6-1 at 7 ("On these facts, Petitioner has failed to satisfy the PLRA's mandate."). The Court disagrees. There is no statutory requirement that an inmate exhaust administrative remedies before filing a habeas petition pursuant to § 2241. *See Carmona*, 243 F.3d at 634; *Cardoza v. Pullen*, 3:22-CV-591 (SVN), 2022 WL 3212408, at *4 (D. Conn. Aug. 9, 2022); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 179 (E.D.N.Y. 2022) ("Section 2241's exhaustion requirement is 'prudential, not statutory.'"); *United States v. Basciano*, 369 F. Supp. 2d 344, 348 (E.D.N.Y. 2005) (finding "the statutory exhaustion requirement set forth under the [PLRA]" inapplicable to § 2241 petition); *Perez v. Zenk*, No. 04-CV-5069 (CBA), 2005 WL 990696, at *2 (E.D.N.Y. Apr. 11, 2005) (noting that the exhaustion requirement for § 2241 petitions "is not grounded in § 1997e, but rather in the common law").

The BP-9 initial formal filing must be filed within twenty calendar days "following the date on which the basis for the Request occurred." *Id.* § 542.14.[2] The inmate is to receive the BP-9 form from "institution staff (ordinarily, the correctional counselor)." *Id.* § 542.14(c)(1). After the inmate fills out the form, he shall "date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor)." *Id.* § 542.14(c)(4).

The Warden must respond to the request within twenty calendar days. 28 C.F.R. § 542.18. If the inmate does not receive a response within the allotted time, he may consider the absence of a response to be a denial and proceed to the next step of the administrative remedy process. *Id.*; *see also Rosales v. Petrucci*, No. 20-CV-2136 (CS), 2021 WL 5449701, at *4 (S.D.N.Y. Nov. 22, 2021) (if the inmate has not received a response within the prescribed time, he "may consider the absence of a response to be a denial at that level"). An administrative appeal is not fully exhausted until it has been considered by the General Counsel's Office according to the proper deadlines and procedural rules. *See id. See also Woodford v. Ngo*, 548 U.S. 81, 89–90 (2006); *South v. Licon-Vitale*, No. 3:19-cv-1763 (VLB), 2020 WL 3064320, at *1 (D. Conn. June 9, 2020).

The failure to exhaust administrative remedies "results in a procedural default." *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009); *see also Woodford*, 548 U.S. at 92 ("In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default . . . ."). Procedural default by a § 2241 petitioner may be

---

[2] Under certain circumstances, where the inmate has demonstrated a situation preventing him from submitting the request, an extension of the filing time may be allowed. 28 C.F.R. § 542.14(b). Section 542.14 includes examples of such situations, including an extended period in-transit where the inmate was separated from needed documents, time when the inmate was physically incapable of preparing the request or appeal, an unusually long time for informal resolution attempts, or a delayed response to a request for copies of dispositions under § 542.19. *Id.*

3

excused upon a showing of cause and prejudice. *Carmona*, 243 F.3d at 634–35. Specifically, when "legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies," the failure to exhaust may be excused. *Id.*; *see also Beharry*, 329 F.3d at 62.

## II. RELEVANT BACKGROUND

The habeas petition and its attachments, which are deemed integral to the petition, are accepted as true for purposes of the present motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

Petitioner arrived at FCI Danbury in April of 2021. Pet., ECF No. 1, at 13. He alleges that, upon his arrival there, he communicated with medical staff about his desire to be evaluated for ASD and other mental health concerns. *Id.* He further alleges that his requests were met with no response, and that he was told to "be patient" or that he had been "scheduled" for appointments that never materialized. *Id.*

Petitioner has attached documents to his petition that reflect the following series of events concerning his exhaustion of administrative remedies. Between June 3, 2021, and September 8, 2021, Petitioner submitted multiple requests for medical and mental health treatment. Ex. A to Pet., ECF No. 1, at 29–38. In particular, on June 3, 2021, Petitioner requested an appointment with medical staff to address various health issues he had been experiencing. *Id.* at 31. Then, on June 6, 2021, Petitioner requested assistance in obtaining an evaluation for ASD, stating that he was supposed to have received such an evaluation in Puerto Rico, but the court there denied his request to be evaluated. *Id.* at 30. On June 9, 2021, in response to his June 3, 2021, request, Petitioner was told that he had been scheduled for an appointment. *Id.* at 31. On June 10, 2021,

4

Respondent Eftaxas responded to Petitioner's June 6 inquiry, stating that Petitioner was on her wait list, but there were many inmates who needed to be seen. *Id.* at 30.

Petitioner followed up with various requests for care between June and September of 2021. On June 23, 2021, Petitioner wrote to medical staff to ask about his June 3 request for an appointment with medical staff. *Id.* at 31. On July 27, 2021, Petitioner again asked to be tested for ASD for his "own personal reason[s]." *Id.* at 32. On August 1, 2021, Petitioner sent a message to health services describing his concerns and asking "to talk to someone that [could] help [him]." *Id.* at 33. On September 8, 2021, Petitioner sent two messages to health services complaining that he had not yet been seen. *Id.* at 34–35. Respondent Eftaxas responded to Petitioner's July 27 email on September 9, noting that Petitioner's file included no suggestion that he suffered from ASD and stating that the facility typically did not test for this disorder without a documented history of symptoms. *Id.* at 36. That same day, Petitioner also received a separate response to his July 27 email; specifically, someone from the psychology staff wrote to Petitioner, stating that he might be well-qualified for sex offender programming and asking whether Petitioner was interested in such programming. *Id.* at 37. On September 14, 2021, health services responded to one of Petitioner's September 8 emails; the response stated, "I just placed another request with the below information." *Id.* at 38.

On November 17, 2021, Petitioner filed a BP-8 form, which is a request for informal resolution. *Id.* at 39. He complained that he had not been seen by mental health staff and had not been evaluated for ASD. *Id.* On November 22, 2021, Petitioner wrote a letter to his counselor, stating that he had spoken with Respondent Eftaxas regarding his grievance, but a resolution was not accomplished. *Id.* at 41. In his letter, Petitioner requested that his BP-8 form be returned to

him and that he be provided a BP-9 form. *Id.* at 41. On December 7, 2021, Petitioner's correctional counselor marked on the BP-8 form that an informal resolution was accomplished, and the form was signed by both the correctional counselor and a unit manager. *Id.* at 39. The correctional counselor's comments on the form referenced a statement from the Chief Psychologist, which was attached to the form. *Id.* at 40. In the statement, the Chief Psychologist wrote that Petitioner was seen upon intake at FCI Danbury in May of 2021, and was told at that time that he did not meet the autism criteria and would not be given a diagnosis. *Id.* The Chief Psychologist also stated that Petitioner had been seen on November 22, 2021, in response to his many requests and was told he did not meet the criteria for ASD or bipolar disorder. *Id.*

On January 2, 2022, Petitioner submitted a second request for a BP-9 form, disputing the correctional counselor's representation on his BP-8 form that a resolution had been accomplished. *Id.* at 44. In messages to his counselor and Respondent Pullen dated January 15, 2022, Petitioner recounted that he had requested a BP-9 form several times and finally received it on January 12, 2022. *Id.* at 45–46. Petitioner gave the completed BP-9 form to his counselor on January 13, 2022. *Id.* at 46. The next day, he received an envelope returning the BP-9, dated January 13, 2022, along with a note stating that the deadline for filing a BP-9 is twenty calendar days following the date on which the basis for the request occurred. *Id.*; *see id.* at 42–43. In the messages he sent to his counselor and Respondent Pullen on January 15, 2022, Petitioner claimed that he was unable to timely file his BP-9 because he was not given the form until January 12, 2022. *Id.* at 45–46. Petitioner requested an extension of time and another BP-9 form to complete and file, *id.*, but the record presently before the Court does not reflect whether he was provided with another form.

6

### III. LEGAL STANDARD GOVERNING DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)[3]

The Court reviews a motion to dismiss a habeas petition brought pursuant to Rule 12(b)(6) under the same principles that apply to a motion to dismiss a civil complaint under the same rule. *Spiegelmann v. Erfe*, No. 3:17-CV-2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018). To survive a motion to dismiss, the petition must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57.

Because Petitioner filed the present petition *pro se* and continues to proceed *pro se*, the Court must construe his filings "liberally" and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (emphasis omitted). Yet, "[d]espite the special solicitude that the Court must show [Petitioner] out of consideration for his *pro se* status, his petition must still include sufficient factual allegations to meet the standard of facial plausibility to survive a motion to dismiss under Rule 12(b)(6)."

---

[3] Respondents have moved to dismiss solely under Federal Rule of Civil Procedure 12(b)(1), claiming that the Court lacks subject matter jurisdiction over this action because Petitioner did not exhaust his administrative remedies before filing suit. Respondents have not provided any binding precedent to support this view and, indeed, whether § 2241's exhaustion requirement is jurisdictional is an "open question." *McDonald v. Sage*, No. 3:20-cv-1737 (SRU), 2022 WL 503925, at *2 (D. Conn. Feb. 18, 2022); *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 436 n.18 (D. Conn. 2020) (noting that "[i]t is debatable whether the exhaustion requirement for a [s]ection 2241 habeas petition should be treated as a 'jurisdictional' issue rather than as an affirmative defense"). In light of this uncertainty, the Court will treat the exhaustion of administrative remedies as an affirmative defense, and will address Respondents' motion as a motion to dismiss under the Rule 12(b)(6) standard for failure to state a claim. *See McDonald*, 2022 WL 503925, at *2 (doing the same).

*Anderson v. Williams*, No. 3:15-CV-1364 (VAB), 2017 WL 855795, at *6 (D. Conn. Mar. 3, 2017) (internal quotation marks omitted).

In considering a motion to dismiss, the Court typically may consider only the complaint, or, here, the petition. The petition, however, "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as any documents deemed "integral" to the petition. *Chambers*, 282 F.3d at 152–53 (internal quotation marks omitted). *See also Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (explaining that, in considering a motion to dismiss, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint"). To that end, because the petition attaches and relies on records relating to Petitioner's exhaustion of remedies, and because such records are integral to the complaint, the Court will consider those documents in deciding this motion.

## IV. DISCUSSION

Respondents contend that Petitioner failed to properly exhaust his administrative remedies before commencing this action. Specifically, Respondents argue that prison records include no evidence that Petitioner ever filed any BP-9 forms, let alone any appeals at the BP-10 and BP-11 levels. Petitioner responds that the exhibits attached to his petition show that he was unable to pursue his administrative remedies because he was not provided the necessary forms in a timely manner.

For purposes of the present motion, Petitioner has sufficiently alleged that legitimate circumstances beyond his control—particularly, the prison staff's delay in providing Petitioner

with a BP-9 form—precluded him from fully pursuing his administrative remedies. *See Carmona*, 243 F.3d at 634–35. The Court begins by noting that courts in this Circuit have recognized that "a denial of grievance forms does not, in itself, make administrative remedies unavailable." *Tashbook v. Petrucci*, No. 20 Civ. 5318 (KMK)(PED), 2021 WL 8013812, at *4 (S.D.N.Y. Apr. 22, 2021), *report and recommendation adopted*, 2022 WL 884974 (S.D.N.Y. Mar. 25, 2022) (quoting *Gottesfeld v. Anderson*, No. 18 Civ. 10836, 2020 WL 1082590, at *8 (S.D.N.Y. Mar. 6, 2020)). Rather, even if a correctional facility fails to make grievance forms available, a prisoner still has an "obligation to undertake reasonable efforts to properly exhaust." *Id.* Here, for the purpose of withstanding dismissal under Rule 12(b)(6), the petition and its attachments provide sufficient support for Petitioner's assertion that he took reasonable efforts to exhaust his administrative remedies but was unable to do so because the BOP failed to provide him with the necessary forms.

The materials Petitioner has submitted with his petition demonstrate that he asked prison staff repeatedly for a BP-9 form, beginning on November 22, 2021, (long before his BP-8 was returned on December 8, 2021) and continuing through January 12, 2022. After Petitioner was finally provided the form on January 12, 2022, he submitted it to his counselor, only to have it returned with a note suggesting that he had failed to file it within twenty days of the issue it sought to resolve.[4] Had Petitioner been given the form when he first requested it, or even a reasonable number of days thereafter, it likely would have been timely because, once Petitioner received the

---

[4] Respondents have submitted a declaration from Cheryl Magnusson, a legal assistant employed by the BOP, which states that the BOP has no record of Petitioner submitting a BP-9 form related to the issues raised in the Petition. ECF No. 6-2. Even were the Court to consider the declaration and its attachments in ruling on the present motion, which it ordinarily would not do when presented with a motion to dismiss under Rule 12(b)(6), those records do not change the Court's conclusion that Petitioner may be excused from the exhaustion requirement under the circumstances here. At most, the records appear to suggest that the counselor to whom Petitioner gave the BP-9 form on January 13, 2022, never officially submitted it.

9

form, he acted expeditiously, returning it within one day. It therefore appears that Petitioner took reasonable efforts to exhaust his administrative appeals, but these efforts were, at the very least, hindered—if not affirmatively thwarted—by the counselor's delay in providing him with the BP-9 form. *Cf. Ross v. Blake*, 578 U.S. 632, 644 (2016) (administrative procedure is "unavailable" for purposes of exhaustion under the PLRA where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"); *Cruz v. Lee*, No. 14 cv 4870 (NSR)(JCM), 2016 WL 1060330, at *5 (S.D.N.Y. Mar. 15, 2016) (finding that allegations in the complaint might warrant excusing the plaintiff from exhausting administrative remedies under the PLRA where the plaintiff alleged that he had been denied access to grievance procedures despite making reasonable efforts to exhaust by writing a letter to his counselor, speaking to a mental health professional, and writing to the prison superintendent).

For these reasons, Petitioner has demonstrated both good cause for failure to exhaust and prejudice, as Respondents are now claiming that he cannot pursue the present petition because he failed to exhaust.[5] *See Spencer v. Warden FPC Duluth*, Civil No. 13-177 (JNE/JJK), 2014 WL 5106741, at *5 (D. Minn. Oct. 10, 2014) (declining to find, as a matter of law, that the petitioner had not exhausted administrative remedies where he was denied informal grievance forms and

---

[5] The Court recognizes that, after *Carmona*, the Second Circuit laid out four exceptions to the judicial exhaustion requirement in *Beharry*, *see* 329 F.3d at 62, and Petitioner's situation does not necessarily fit squarely into any of those. Nonetheless, the four exceptions listed in *Beharry* were drawn from *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996), which predates *Carmona*, and the Court has found no binding authority suggesting that the Second Circuit's recognition of the four exceptions in *Beharry* was meant to supplant *Carmona*'s more general cause-and-prejudice standard entirely. In any event, there is ample precedent from within this Circuit suggesting that, where a petitioner makes reasonable efforts to exhaust his administrative remedies, but prison officials do not provide him with the necessary forms, exhaustion may be excused. In light of this case law, and in light of the sufficient allegations of cause and prejudice in the petition at issue here, the Court finds dismissal based on a failure to exhaust inappropriate at this stage. This holding is without prejudice to Respondents raising the issue of exhaustion of remedies again, in their response to the petition, if there is additional information available on this issue at that time.

formal BOP appeals forms).

The Court is unpersuaded by Respondents' argument that exhaustion should not be excused because Petitioner was required to treat any non-responses as denials and proceed with the appeals process within the BOP. Here, Petitioner does not merely allege that he received no response to his BP-9 form; rather, he provides documentation suggesting that the BOP returned his BP-9 form as untimely. Contrary to Respondents' suggestion, the BOP did not simply fail to respond to Petitioner's grievance; instead, it issued a response suggesting that Petitioner was foreclosed from filing any additional appeals.

While "[e]xhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," *Woodford*, 548 U.S. at 89 (internal quotation marks omitted), an inmate must be given a fair opportunity to avail himself of that process. Here, it does not appear Petitioner was provided with such an opportunity because of the actions of institution staff. Moreover, in this case, the petition suggests that the BOP *was* given the opportunity to resolve Petitioner's grievances because Petitioner made multiple attempts to avail himself of the grievance process. Accepting the representations in the petition as true, the BOP simply did not take that opportunity; instead, it refused to provide Petitioner with access to the grievance process. Therefore, based on the allegations of the petition, which the Court must accept as true at this stage, as well as the materials attached to the petition, dismissal for failure to exhaust is not warranted. If Respondents have evidence indicating that excusal of exhaustion is not warranted, they may submit it along with their response to the petition.

In sum, because Petitioner may be excused from exhausting his administrative remedies, Respondents' motion to dismiss, which was based solely on Petitioner's alleged failure to exhaust

administrative remedies, is DENIED.

## V. CONCLUSION

Respondents' motion to dismiss the petition for writ of habeas corpus, ECF No. 6, is **DENIED**. By **May 15, 2023**, Respondents shall show cause why the Petition should not be granted.

**SO ORDERED** at Hartford, Connecticut, this 13th day of April, 2023.

                                     */s/ Sarala V. Nagala*
                                     SARALA V. NAGALA
                                     UNITED STATES DISTRICT JUDGE